**In re Anonymous No. 20 D.B. 83**

Disciplinary Board Docket no. 20 D.B. 83.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SCHILLER, *Member,* October 26, 1990—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## HISTORY OF PROCEEDINGS

Petitioner, [ ], filed a statement of resignation dated May 4, 1983 in which he admitted withdrawing money from three separate estates and converting said funds to his own use and purposes. Petitioner was disbarred on consent by order of the Pennsylvania Supreme Court dated May 16, 1983.

On December 5, 1989, petitioner filed a petition for reinstatement with the Disciplinary Board. On December 13, 1989, the matter was referred to Hearing Committee [ , ], consisting of [ ]. A reinstatement hearing was held on March 8, 1990 at which petitioner was represented by [ ], Esq. By its report filed June 25, 1990, the hearing committee recommended that the petition for reinstatement be denied. On July 23, 1990, petitioner filed a brief on exceptions to the report and recommendation of the hearing committee. Office of Disciplinary Counsel did not file a brief opposing petitioner's exceptions.

## FINDINGS OF FACT

Petitioner, [ ], age 69, was admitted to the practice of law in the Commonwealth of Pennsylvania in 1947. Petitioner is married and resides with his wife. At the date of the reinstatement hearing his address was [ ].

Petitioner obtained his undergraduate degree in 1942 from the University of [ ]. (N.T. 42.) During college, petitioner was enlisted in the Army ROTC program and after graduation became an Army fighter pilot. (N.T. 43.) In 1947, petitioner earned his law degree from the University of [ ] and subsequently was admitted to the bar in the Commonwealth of Pennsylvania. (N.T. 43.) For the next 35 years, petitioner actively practiced law. (N.T. 43.) Throughout his legal career, petitioner practiced law

in [  ] County and was a law partner in the firm [B]. (N.T. 30.) Petitioner's practice mainly involved personal injury work, but he also handled other matters. (N.T. 30, 31.) In 1983, petitioner was disbarred on consent after filing a statement of resignation in which he admitted converting estate funds to his own use.

After his disbarment on consent, petitioner sold his interest in the real property in which the law office of the partnership had been located and used the proceeds to make full restitution. Subsequently, the law partnership of [B] was dissolved. (N.T. 43-45.) Although petitioner testified that it was difficult for a man his age to secure employment, petitioner held a series of jobs as follows: night auditing at a [C], selling insurance for [D], driving a delivery vehicle for [E] and chauffeuring an elderly woman. (N.T. 40, 48-50.) Since August 1989, petitioner also has been working as a law clerk researching legal issues and preparing pleadings for [F], Esq., a partner in the firm representing petitioner in this matter. (N.T. 41.)

In order to prepare himself for reinstatement, petitioner attended the Pennsylvania Bar Institute Legal Practice Course at [  ] University held on August 9, 10 and 11, 1989. (N.T. 52.) In addition, petitioner maintained a law library, reviewed the materials in his library, purchased materials issued by the Pennsylvania Bar Institute and reviewed the advance sheets. (N.T. 51-53.)

At the reinstatement hearing petitioner testified to the circumstances surrounding his misconduct, stating he began socializing with a group of people who were wealthier than he and, as a result, he foolishly tried to maintain a lifestyle that he could not afford. (N.T. 60-62.) Petitioner appeared contrite and remorseful.

Petitioner presented the following witnesses who testified to petitioner's moral qualifications, integrity, and good reputation in the community: [G], Esq., past president of the [ ] County Bar Association and present member of its Board of Directors; [H], petitioner's former law partner; and [I], [ ] County Sheriff.

## DISCUSSION

In order for petitioner to gain reinstatement to the practice of law before the bar of the Supreme Court of Pennsylvania, he has the burden of demonstrating, by clear and convincing evidence, that he has both the moral qualifications and the competency and learning in the law required for admission to practice in this Commonwealth. In addition, he has the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest. See Rule 218(c)(3)(i) of the Pennsylvania Rules of Disciplinary Enforcement.

Petitioner was disbarred upon consent for converting funds from three separate estate accounts. Disbarment represents a termination of the license to practice law without a promise of its restoration at any future time. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). The air of finality accompanying the sanction of disbarment requires the board to re-examine the original misconduct before any consideration may be given to petitioner's plea to regain the privilege to practice law. As a threshold issue, the board must first determine whether the magnitude of the breach of trust which prompted the disbarment would permit resumption of the practice of law without a detri-

mental effect upon the integrity and standing of the bar or the administration of justice nor subversion of the public interest.

## The Keller Threshold Issue

Petitioner's misconduct which resulted in his disbarment on consent consisted of his converting estate funds to his own use. The board is aware of the egregious nature of this offense but, on balance, are sufficiently persuaded by the evidence indicating the degree in which petitioner reformed his life. At no time has petitioner ever denied his misconduct nor ignored his responsibility to the injured clients. Petitioner candidly admitted his misconduct at the time of Office of Disciplinary Counsel's initial investigation and again before the committee at the reinstatement hearing. Petitioner made full restitution by selling his interest in the real property which was the location of his law office. Petitioner represented himself as truly remorseful and convinced the hearing committee that he would never again engage in such unethical conduct. Based on the testimony offered by three witnesses, the hearing committee found petitioner to be well-respected in the community. The board agrees with this finding.

In light of the foregoing evidence, the board concurs in the hearing committee's determination that petitioner has met his burden with respect to the *Keller* threshold question. Petitioner's breach of trust is not of such a magnitude that his resumption of the practice of law will have a detrimental effect upon the integrity and standing of the bar or the administration of justice nor be subversive of the public interest.

## Moral Qualifications

Petitioner fully acknowledges and sincerely regrets his past misconduct. He is acutely aware of, and has learned from, his past mistakes. Petitioner testified as follows:

"I was very stupid. I thought that I might go around with a group that was a lot richer than I [sic]. I did things that I should not have done . . . I didn't want to admit that I could not [afford to] go with them . . . I learned that you can live on a lot less." (N.T. 58, 61.)

Petitioner firmly resolved to start anew and not to engage in such misconduct again. In addition, petitioner has made full restitution to his aggrieved clients.

Petitioner testified that during his period of disbarment, he learned how much he "loved the law" and how his goal of being reinstated to the practice of law was what "kept him going." (N.T. 54, 57.)

During the period of disbarment, petitioner did not engage in the practice of law. Although petitioner found it difficult to find employment at his age, he held a series of jobs including night auditing at the [C], selling insurance for [D], driving a delivery vehicle for [E], chauffeuring an elderly woman, and working as a law clerk for [F], Esq. (N.T. 40-41, 48-50).

The hearing committee found that the petitioner was and is held in high esteem by members of his community, both personally and professionally. (Hearing Committee report at 4.) Petitioner presented three witnesses who testified to petitioner's moral qualifications, integrity, and reputation in the community. [G], Esq., a past president of the [ ] County Bar Association and a present member of its Board of Directors, testified that petitioner had a

good reputation in the community. (N.T. 9, 10.) Petitioner's former law partner, [H], Esq., believed that petitioner's reinstatement would not have an adverse effect on the integrity and standing of the bar. (N.T. 33.) Finally [I], County Sheriff and former Chief of Police of [ ] Township, testified that petitioner has an excellent reputation for truth and honesty. (N.T. 36.)

The Disciplinary Board concurs with the hearing committee that petitioner possesses the requisite moral qualifications to be reinstated to the practice of law in the Commonwealth of Pennsylvania.

### Competency and Learning in the Law

In order to prepare himself for reinstatement, petitioner attended and completed the Pennsylvania Bar Institute's Legal Practice Course at [ ] University held on August 9, 10 and 11, 1989. Petitioner kept abreast of the law by maintaining his own personal library, reviewing the advance sheets and reviewing materials purchased from the Pennsylvania Bar Institute. (N.T. 51-53.) In addition, petitioner has been employed as a law clerk by attorney [F] since August 1989. While working in the office environment, petitioner has researched legal issues and prepared pleadings.

In light of this evidence, petitioner has proven, by clear and convincing evidence, that he has the competency and learning in the law required for reinstatement to the practice of law. The record on this issue clearly refutes the hearing committee's conclusion.

## CONCLUSIONS OF LAW

Petitioner has satisfied the threshold burden that his resumption to the practice of law will not have a detrimental effect upon the integrity and standing of the bar or that the administration of justice, and will not in any way be subversive of the public interest.

Petitioner has met his burden of demonstrating by clear and convincing evidence that he has the moral qualifications as well as the requisite competency and learning in the law required for admission to practice.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends to the Supreme Court of Pennsylvania that the instant petition for reinstatement of [petitioner] to the practice of law in the Commonwealth of Pennsylvania be granted by your honorable court.

The board further recommends that, pursuant to Rule 218(3), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of said petition for reinstatement.

Ms. Judith Heh did not participate in the adjudication.

## ORDER

And now, March 1, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated October 26, 1990, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board

in the investigation and processing of the petition for reinstatement.

Mr. Justice Papadakos dissents.